ARTHUR BRADLEY V. THE STATE.

No. 20798. Delivered February 7, 1940.
Rehearing Denied March 20, 1940.

The opinion states the case.

*John C. Henderson,* of Angleton, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, Judge.

The offense is theft of cattle; the punishment, confinement in the penitentiary for two years.

Appellant challenges the sufficiency of the evidence on the ground that the testimony fails to show the falsity of his alleged exculpatory statement. Adverting to the testimony, it is observed that J. H. Dingle, the injured party, owned some cattle which were ranging in the Bryan pasture, near the Hample pasture. On the 9th day of May, 1939, he lost a "bluish dun heifer yearling with a white face." When he last saw this animal she was in the Bryan pasture. She had not been branded. When he recovered her she bore appellant's brand. After having learned that appellant had branded the heifer Mr. Dingle talked to appellant about his loss, it appearing that appellant went to him voluntarily relative to the matter about three or four days after the recovery of the heifer. In his conversation with Mr. Dingle appellant stated to him that he had bought the heifer from Gus Ward. He further stated that he had been advised by Mr. Tigner to talk with the injured party about the matter. Again, he states that he thought all along that the animal belonged to Mr. Dingle. At this juncture we quote the testimony of J. S. Caldwell, a witness for the State, as follows:

"My name is J. S. Caldwell and my home is in Freeport, Texas. I have a pasture down in the direction of Dr. Hample's pasture. I would say my pasture is in the neighborhood of

Dr. Hample's pasture, but I do not believe the two pastures join. I believe Steve Perry has a tract of land in between them. There are ninety acres in my pasture. I had occasion to go into my pasture on the 9th day of May of this year. At that time I saw this defendant out there. I was going through the pasture and ran into these two men in a thicket. The two men I ran into were Gus Ward and Arthur Bradley. They were to the westward of the pasture, about half way down and in a thicket. I was about one hundred feet away from them when I first saw them. I saw some calves there and a fire. I did not care about walking up on a couple of men with calves and went back to my car and got my shot gun. This defendant saw me and overtook me, and I went back with him. They had a kind of light color dun-looking heifer. I saw that same heifer a few days after that and identified her. At the time I saw this heifer there in the thicket, she had not been branded. I told this defendant that he could not brand her there in my pasture and then he asked if he could not keep them there in my pasture and I told him that he could not. No, sir, at that time Gus Ward and this defendant did not have the animals. They were tied to a tree.

"This was on a Wednesday in May. I think it was the 9th or the 10th; whatever date Wednesday falls on. At the time I first talked to Arthur Bradley, we were 150 or maybe 200 yards away from the cattle. I was afoot and Arthur Bradley caught up with me. First he asked me if I would let him leave them in my pasture a day or so. I told him that I would not and then I told him to get out. We were going back toward the animals at that time. I wanted to get a better look at the calves. He wanted me to go back and he attempted to sell them to me. There were two animals. He told me that he and Gus Ward had them, but he did not tell me that he had bought them. I think he was figuring on buying them. You ask me if I did not tell him at that time that I would give him a dollar per head profit on them. We talked about it, but I don't think we got together on how much profit he would get. He said he had another one in the bunch and I understand that he gave fifty dollars for the three head. No, sir, I don't think it was forty dollars; I think it was fifty dollars. I don't think I offered him a dollar a head profit on them; that is the way they were usually handled, though, and it is considered pretty good profit.

"I have lived in that section of the country since 1915. I have around fifteen head of cattle; was raised on a ranch and am familiar with that business. You ask me if I am familiar with the ranches out there and with the amount of cattle they

have, in a general way. I know where a man has ten head or a big bunch, is all. It is my testimony that this heifer I saw that day was the same heifer Mr. Dingle just described on the witness stand. Arthur Bradley did not tell me where he got this particular heifer, but he did say she came out of the Bryan pasture down there. I think what he was trying to do was to leave them in my pasture, but when he saw that I would not let him leave them, he thought he would sell them to me. I don't think Arthur Bradley has a pasture of his own. He works for Mrs. Huntington. She has a pasture. I know a negro down there by the name of Lon Hawkins. He has a little shack on the place and pays me two dollars a month to stay there. Once in a while he helps me to build fences, but he does not farm for me."

Appellant did not testify but introduced several witnesses who expressed the opinion that his general reputation as a peaceable and law-abiding citizen was good.

We are unable to reach the conclusion that the testimony, in its entirety, fails to show the falsity of appellant's explanation of his possession of the stolen heifer. It is observed that appellant was in possession of the animal in a thicket in the Caldwell pasture, which was not far removed from the Bryan pasture, when he and Gus Ward were discovered. The animals they had were tied to a tree. At the time appellant was preparing to brand the animal belonging to Mr. Dingle, and apparently Gus Ward was preparing to place a different brand on another animal. Again, appellant stated to Mr. Caldwell, as already observed, that the heifer came out of the Bryan pasture. Appellant worked for Mrs. Huntington. Notwithstanding she owned a pasture, appellant was preparing to leave the stolen animal in the pasture of Mr. Caldwell. When finally recovered, the stolen animal was in a pen in the Hample pasture. She had been branded "TEC," this being appellant's brand. There was also a calf at Hample's, which Gus Ward claimed. She was branded "NA." In view of the proximity to the Bryan pasture, where she had been ranging, of the place where appellant was first discovered to have possession of the stolen heifer, and in view of the further fact that appellant and Gus Ward were at the time together under the circumstances heretofore detailed, we are of opinion that the jury were warranted in concluding that appellant and Ward acted together in the theft of Mr. Dingle's calf. It might be added that the fact that appellant knew the animal came from the Bryan pasture would, with the testimony in its entirety, war-

572

rant the conclusion that appellant was in the Bryan pasture and participated in the theft.

The court failed to submit an instruction covering appellant's affirmative defensive theory. If appellant desired to have the court instruct the jury to acquit him if they believed he purchased the heifer from Gus Ward he should have excepted to the charge or should have presented a requested instruction covering the subject. This he failed to do. Art. 658, C. C. P., in part, provides: "Before said charge is read to the jury, the defendant or his counsel shall have a reasonable time to examine the same and he shall present his objections thereto in writing, distinctly specifying each ground of objection."

The judgment is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

Appellant renews his contention that the trial court should have responded to the exception to his charge and given the requested instruction to the effect that appellant could not be convicted unless he was a principal in the original taking of the stolen animal.

We observe that the indictment charged appellant and Gus Ward jointly with the theft of the animal, but appellant was alone being tried upon an order of severance. The court properly defined principals and told the jury if appellant "acting by himself or with Gus Ward" fraudulently took the animal, etc., to convict him. Appellant did not testify. There was no evidence that he was not present when the animal was taken. It was elicited from the owner on cross examination that appellant told him he had bought the animal from Gus Ward; whether the claimed purchase occurred before or after the theft appellant did not say. If there was any defensive issue it was the claimed purchase. As pointed out in our former opinion there was no requested charge pertinently presenting such issue, nor any exception to the charge for omission of such instruction.

Believing our original opinion properly disposed of the case, the motion for rehearing is overruled.